INHABITANTS OF ORNEVILLE *vs.* URIAH T. PEARSON and others.

*Collector of taxes—liability of.*

A collector of taxes, acting under a warrant to make a partial collection of the assessments committed to him, is exonerated from completing the service under such warrant if it directs an exemption from distress of property not exempted by statute.

Where a person was collector of taxes for consecutive years, money paid, without any appropriation on his part, by him to the treasurer, who applied it to the oldest liability without any notice that the money came from the assessments of any particular year, cannot afterwards be applied by the collector upon his liabilities for a subsequent year though collected from that year's taxes.

Where a collector who was also a selectman, at the request of the overseers of the poor, advanced money for town purposes, and the sum was afterwards paid to him by the town officers without notice that the money so advanced came from any particular fund or from official sources, neither he nor his sureties can require that such amount shall be allowed upon his liability as collector although it was, in fact, collected from the taxes committed to him.

A collector is not entitled to anything for committing a debtor after one year from the time the tax is committed to him.

ON REPORT.

This was an action of debt upon a bond given by Uriah T. Pearson, as collector of the town of Orneville, for the year 1869, to the plaintiffs, and signed by the other defendants as sureties. The assessors for that year delivered to Pearson a book containing the lists of taxes and a warrant for their collection in the usual form, as prescribed by R. S. of 1857, c. 6, § 79, except that, in the last clause, the officer was commanded, " for want of goods and chattels whereon to make distress besides those *animals*, implements, tools, articles of furniture, *and other goods. and chattels* which are by law exempted from attachment for debt," to arrest and commit those refusing to pay their taxes. It will be noticed that the words italicized above do not appear in R. S. of 1857, c. 6, § 79, which is same as R. S. of 1871, c. 6, § 94. The warrant was executed and delivered to the collector about the first of Sep-

tember, though dated September 31, 1869. The balance of un-
collected taxes for 1869 was $336.43, with which the collector
was chargeable unless excused from its collection by reason of the
informality of his warrant in containing the words above-men-
tioned. The collector, at a hearing of this cause before an audit-
or, October 20, 1872, made a written offer to return to the
selectmen his list of uncollected taxes and the warrant, which he
claimed to be defective. After January, 1872, by special order
from the selectmen, Pearson committed to jail certain persons, for
which services he claimed ten dollars. He was one of the select-
men for 1870-1871 and, by order of the overseers of the poor,
paid $144.11 for the support of the poor of the town. This pay-
ment was made from moneys received for taxes, but this fact was
not known to the other selectmen, who drew an order in favor of
Pearson for the $144.11 and he applied it to his own benefit. His
sureties contended that this sum, having once been collected and
paid to the use of the town, should be deducted from the amount
for which they were liable, if they were holden for anything, as
the drawing of it from the town's treasury by the order was the
act of the selectmen. Mr. Pearson was collector for 1868, but
the bond and tax of that year were not in controversy. He paid
the town's treasurer, in the winter of 1871, $304.03, in two pay-
ments, giving no direction as to their application and taking re-
ceipts which indicated nothing as to the year upon which they
were allowed, but they were, in fact, applied by the treasurer to
the taxes of 1868. The moneys, all but $34.50, given for his ser-
vices as selectman, were collected from the taxes of 1869, and the
defendants claimed to have them applied to liquidate the claim of
the town against the collector for the taxes of that year. If so
applied there would be no deficiency for 1869 on account of cash
collections, but there would be only left the claim for uncollected
taxes. If the $304.03 were properly applied to the balance due
for the taxes of 1868, there would be a deficit to that amount
upon the collections of 1869.

*C. A. Everett*, for plaintiffs.

If the warrant is legal we should recover, according to the auditor's report, $336.43, uncollected taxes, as well as the deficit of $304.03; being $640.46. The first form of warrant was prescribed by Act of 1821, §§ 17, 18; 2 Laws of Maine, 478. It contained no exemption or exception of goods to be distrained. Between 1821 and 1841 there were many exemption acts passed, but the form of warrant remained unchanged. The statutes and not the warrant indicate what property may be taken. The clauses of the warrant are mere recitals. The form inserted in the first revision, R. S. of 1841, c. 14, § 57, is the same as that used in this case. The collector should no more consult the warrant to learn what is subject to distraint than a sheriff commanded to attach property generally upon a writ would look at that precept to see what is attachable. The form in R. S. of 1841, c. 14, § 57, was amended by Acts of 1850, c. 205, by striking out the word " animals " and the words " and other goods and chattels." But he might have arrested delinquents under his warrant. He did arrest certain persons by virtue of it and claims ten dollars for doing it. If his warrant did not authorize it how can he claim compensation for an illegal arrest ?

The form used was " in substance " that prescribed. *Mussey* v. *White*, 3 Greenl. 290 ; *King* v. *Whitcomb*, 1 Met. 328 ; *Barnard* v. *Graves*, 13 Met. 85. The Massachusetts statutes at the time of these decisions required that the warrant should specify the duties of the collector. See also *Cheshire* v. *Howland*, 13 Gray, 321, citing *Sandwich* v. *Fish*, 2 Gray, 298.

Pearson had no right to ten dollars for arrest, as R. S. of 1857, c. 6, § 128, declared he should not be released from liability for the tax unless the delinquent were committed within one year, which time had elapsed in this case. Pearson has had his pay once for the $144.11 advanced to support the town's poor and that must suffice. He had a claim against the town and it was paid ; how does that affect this bond ? The law appropriates payments to debts in the order of time if the payer makes no differ-

ent appropriation.   *Readfield* v. *Shaver*, 50 Maine, 36 ; *Milliken* v. *Tufts*, 31 Maine, 497.

*W. P. Young* also argued for plaintiffs, claiming, in addition to considerations upon the points above stated, that Pearson's own tax of $69.50 could not by him be treated as uncollected, but should be added to the $304.03, even if he were not holden for all the taxes he had failed to collect.   He could not plead that his failure to collect his own tax was by reason of any defect in his warrant.

*Lebroke* and *Pratt*, for defendants.

The collector never had a sufficient warrant with which to enforce payment of the $336.43, uncollected taxes, and so is not liable for them.

The treasurer had no right to appropriate part of the collections of 1869 to relieve the sureties of 1868 at the expense of those of 1869.   Pearson could not have authorized this, had he desired to do it, so as to affect his sureties of 1869.   *P. M. General* v. *Nowell*, Gilpin, 106 ; *Myers* v. *United States*, 1 McLean, 493 ; *United States* v. *Eckford*, 1 Howard, 250 ; *United States* v. *January*, 7 Cranch, 572 ; *Stone* v. *Seymour*, 15 Wend. 19 ; *Porter* v. *Stanley*, 47 Maine, 515.

*A fortiori*, then, the treasurer cannot do it, of his own mere motion, without Pearson's assent.   *Readfield* v. *Shaver*, 50 Maine, 36, simply decides that the burden is on the defendants to show the deficit for each year, or for that for which they are holden.

PETERS, J.   It was provided by R. S. of 1857, c. 6, § 84, which is applicable to this case, that a warrant of a certain description should be committed to the collector and that he "shall faithfully obey its directions."   Such warrant, in all material respects, should be a regular and legal one.   Whether the general statutory formula of a warrant would be sufficient, when (as, it is argued, it sometimes has been) at variance with other positive and particular provisions of the statute, it is not now necessary to con-

sider, for it is clear that the warrant in question is repugnant to the prescribed form and also not in accordance with particular provisions.    This warrant directed an exemption from distress of " those *animals,* implements, tools, articles of furniture, *and other goods and chattels* exempted from attachment for debt," while the form of warrant provided by statute exempted only " those implements, tools, and articles of furniture exempted from attachment for debt."    The collector was, therefore, circumscribed within less than the statutory limit of the articles to be distrained in case of the non-payment of taxes.

It is not an answer to this objection that the collector could discharge his duties fully by making arrests where he did not make collection, for such a proceeding might be both illegal and unprofitable.    By R. S. of 1857, c. 6, § 90, an arrest would be unwarranted if the debtor should show sufficient goods and chattels to the collector to pay his tax; so that, if the debtor should show certain property exempted by the warrant and not exempted by law, the collector might be in a dilemma of obeying the warrant and disobeying the law, and by a scrupulous compliance with the very terms of his warrant, in making an illegal arrest, expose himself to penalties for his official exactness.    *Lothrop* v. *Ide,* 13 Gray, 96.

The strongest case cited by the plaintiffs to sustain the validity of the warrant is *Barnard* v.  *Graves,* 13 Met. 185, where a question arose between the debtor and the collector whether a distress, made by virtue of a warrant erroneous in some respect, was illegal on that account, when, notwithstanding the defects in the warrant, all the proceedings under it were executed in conformity to law.    The question here is between the collector and the town, whether an officer shall be compelled to act under an instrument not authorized by law.    We are of the opinion that the collector is excused from any further service under it, and that he and his sureties are discharged from liability as far as the uncollected assessments are concerned.    An amended and unobjectionable warrant can easily be committed to the same or some other collector.

*Orono* v. *Wedgwood*, 44 Maine, 49; *Cheshire* v. *Howland*, 13 Gray, 321.

The item of ten dollars for committing a debtor cannot be allowed the collector. The year within which it should have been made having expired an arrest made afterwards would be rather for the benefit of the collector than the town. See R. S. of 1857, c. 6, § 128.

Nor can the defendants be allowed the item of $144.11. The overseers authorized the collector to pay that sum of money for the support of the poor. He paid it out of money collected from the taxes assessed in 1869; but he was not directed or authorized to pay the bills out of any town funds, and it does not appear that the town officers knew that the town funds were so used. Having contracted that amount of indebtedness with the collector the town afterwards paid the same. Money has no ear-marks as other property may have by which its ownership can be followed, and, as this court say in *Dwinel* v. *Sawyer*, 53 Maine, 27, "It would be an insupportable burden upon the business community if they were obliged at their own peril to ascertain that every dollar they receive in the ordinary course of business is lawfully in the hands of him from whom they received it, with power to dispose of it as he undertakes to do."

The above remarks are as significant upon the next point submitted. The collector paid to the treasurer certain money, collected mostly from assessments of 1869, and the treasurer credited it upon the collector's liability for taxes collected upon the assessments of 1868. The collector, although he intended to have it applied upon the collections of 1869, expressed no intention about it, and made no appropriation whatever, nor undertook to make any. The treasurer did make an appropriation and, under the circumstances, very properly upon the liability of the longest standing. It does not appear that the treasurer knew where the money came from, or that he was aware that the collector desired to make any particular appropriation of it. It was paid in to him as money merely, and not as money collected upon

the tax lists of 1869. There would be no end to error and confusion in town transactions if such appropriations and settlements can be afterwards repudiated or overhauled when obtained without unfairness or fraud. According to the authorities the appropriation as made must stand. *Coleraine* v. *Bell,* 9 Met. 499; *Sandwich* v. *Fish,* 2 Gray, 298; *Readfield* v. *Shaver,* 50 Maine, 36.

The counsel for the defendants relies much upon the case of *Porter* v. *Stanley,* 47 Maine, 515, as opposed to this conclusion and as conflicting to some extent with the case of *Readfield* v. *Shaver,* before cited. The cases are not alike. In *Porter* v. *Stanley* there was a special fund consisting of town orders taken by a collector, who was also treasurer, for the taxes assessed in certain years, and in his settlement with the town officers applied upon his liabilities as collector for another year. It was not consented to by the collector, " unless it was right," which it was not, and was a clear case of an intentional misappropriation, into which the collector was induced by the town officers. It would have been another thing if, as here, the orders or money had been paid over as money merely and not as any particular fund.

The result must be that the defendants are to be defaulted for $304.03 with interest from date of writ.

*Defendants defaulted.*

Appleton, C. J.; Cutting, Walton, Dickerson, and Barrows, JJ., concurred.